UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAURIE A. LUDER

                              Plaintiff,

        v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

                              Defendant.
_____

**REPORT
and
RECOMMENDATION**

**15-CV-00025A(F)**

APPEARANCES:          LAW OFFICES OF KENNETH R. HILLER
                      Attorneys for Plaintiff
                      TIMOTHY HILLER, of Counsel
                      6000 N. Bailey Avenue
                      Suite 1A
                      Amherst, New York 14226

                      JAMES P. KENNEDY
                      ACTING UNITED STATES ATTORNEY
                      Attorney for Defendant
                      JOANNE JACKSON PENGELLY
                      Assistant United States Attorney, of Counsel
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York 14202, and

                      STEPHEN P. CONTE
                      Regional Chief Counsel
                      United States Social Security Administration
                      Office of the General Counsel, of Counsel
                      26 Federal Plaza
                      Room 3904
                      New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## <u>JURISDICTION</u>

This action was referred to the undersigned by Honorable Richard J. Arcara on June 5, 2015. (Doc. No. 11). The matter is presently before the court on motions for judgment on the pleadings, filed on June 4, 2015, by Plaintiff (Doc. No. 10), and on November 2, 2015, by Defendant (Doc. No. 17).

## <u>BACKGROUND</u>

Plaintiff Laurie Luder, ("Plaintiff" or "Luder"), seeks review of Defendant's decision denying her Social Security Insurance Benefits under Title II of the Social Security Act ("the Act"), and Supplemental Security Income under Title XVI of the Act, together ("disability benefits"). In denying Plaintiff's application for disability benefits, Defendant determined that Plaintiff had the severe impairments of syncope (fainting), degenerative disc disease, anxiety, depression, chronic left foot pain secondary to a history of fracture, thyroid disorder and gastritis (R. 24),[2] and that Plaintiff does not have an impairment or combination of impairments within the Act's definition of impairment. (R. 25). Defendant further determined that Plaintiff had the residual functional capacity ("RFC"), to perform sedentary work with the limitations to occasionally lifting or carrying ten pounds, frequently lifting or carrying less than ten pounds, sitting for approximately six hours in an eight-hour workday, walking or standing more than two hours in an eight-hour workday, and performing only simple work that includes occasional contact with others. (R. 27). As such, Plaintiff was found not disabled, as defined in the Act, at any

---

[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

time from the alleged onset date through the date of the Administrative Law Judge's decision on July 2, 2013.

## PROCEDURAL HISTORY

Plaintiff filed her application for disability benefits on June 11, 2011 (R. 132-41), that was initially denied by Defendant on August 21, 2012, and, pursuant to Plaintiff's request filed on September 6, 2012 (R. 15-18), a hearing was held before Administrative Law Judge Gitel Reich ("Reich" or "the ALJ"), on June 11, 2013, in Buffalo, New York. (R. 37-53). Plaintiff, represented by Valerie Silvas, Esq. ("Silvas"), appeared and testified at the hearing (R. 39-52). The ALJ's decision denying Plaintiff's claim was rendered on July 2, 2013. (R. 22-32). Plaintiff requested review by the Appeals Council, and the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on November 10, 2014. (R. 1-6). This action followed on January 8, 2015, with Plaintiff alleging that the ALJ erred by failing to find her disabled. (Doc. No. 1).

On June 5, 2015, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Doc. No. 10) ("Plaintiff's Memorandum"). Defendant filed, on November 2, 2015, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 17) ("Defendant's Memorandum"). Plaintiff filed a reply to Defendant's motion on the pleadings on November 23, 2015 ("Plaintiff's Reply Memorandum") (Doc. No. 18). Oral argument was deemed unnecessary. Based on the following, Plaintiff's

motion for judgment on the pleadings should be DENIED; Defendant's motion for judgment on the pleadings should be GRANTED.

## **FACTS[3]**

Plaintiff was born on November 5, 1968, lives with her adult daughter and friend, and completed ninth grade in high school. (R. 136, 206). Plaintiff alleges that she is not able to work as a result of anxiety, depression, back and foot pain. (R. 206). Plaintiff worked most recently as a housekeeper at Brooks Memorial Hospital in Dunkirk, New York, a job that Plaintiff left on November 10, 2010, as a result of Plaintiff's anxiety. (R. 41, 198).

Relevant to the period of disability in this case, on January 6, 2011, Mark Fenzl, M.D. ("Dr. Fenzl"), reviewed an X-ray of Plaintiff's lumbar spine that revealed mild lumbar spondylosis, with vertebral spurring at Plaintiff's L2,[4] L3-4, and L5 disc spaces, and mild left convex lumbar spine curvature. (R. 253).

On January 10, 2011, Plaintiff visited Joel Yoviene, M.D. ("Dr. Yoviene"), with reports of back pain from moving items from a storage facility. Dr. Yoviene completed a physical examination on Plaintiff that showed low back tenderness and good range of motion with some limitation to forward flexion (R. 237), referred Plaintiff to physical therapy, and noted that Plaintiff should not return to work until February 7, 2010. *Id.*

On February 11, 2011, Plaintiff returned to Dr. Yoviene and reported that the Flexeril (pain) and physical therapy did not improve Plaintiff's back pain. (R. 236).

---

[3] Taken from the pleadings and the administrative record.
[4] L-2, L-3, L-4, and L-5 refer to numbered disc space segments in an individual's lumbar spine.

On March 28, 2011, Plaintiff returned to Dr. Yoviene for a blood pressure follow-up. Dr. Yoviene noted that Plaintiff had high blood pressure, and that Plaintiff's weight had increased 12 pounds to a total of 246 pounds, and recommended that Plaintiff increase her exercise, limit her food intake and salt, and quit smoking. (R. 235). A magnetic resonance imaging ("MRI") scan of Plaintiff's lower back taken the same day showed lumbarization (disconnection) of Plaintiff's first sacral vertebral body (bone at base of the spine), disc bulge at Plaintiff's L3-L4 disc spaces, facet arthropathy (joint disease) at Plaintiff's L4-L5 disc spaces, and moderate facet arthropathy at Plaintiff's L5-S-1[5] disc segment. (R. 251). Plaintiff returned to Dr. Yoviene for continued back pain on April 29, 2011.

On September 7, 2011, Dr. Yoviene noted that Plaintiff reported improved pain while taking Vitamin D. (R. 229).

On September 23, 2011, Physician Assistant Seth P. Achey ("P.A. Achey"), completed a consultative physical examination on Plaintiff's left foot and noted that Plaintiff reported increased pain since stepping on a tree limb in her back yard. (R. 256). Upon examination, P.A. Achey evaluated Plaintiff with tenderness upon palpation of Plaintiff's fifth metatarsal bone, with no swelling and recommended Plaintiff use a bone stimulator for healing of a fracture that occurred 10 to 12 years earlier. *Id.*

On October 14, 2011, Plaintiff visited Dr. Yoviene and reported that she had not begun treatment with the recommended back specialists because Plaintiff's medical insurance premium payment was overdue. (R. 227).

---

[5] S-1 refers to a numbered section of an individual's sacral spine.

On November 11, 2011, Dr. Fenzl reviewed an X-ray of Plaintiff's left foot that showed an old non-union transverse fracture of Plaintiff's proximal fifth metatarsal bone of Plaintiff's left foot. (R. 248).

On March 28, 2012 (R. 270), Plaintiff returned to Dr. Yoviene for a follow-up appointment for foot and back pain, and for an emergency room visit for a panic attack. Plaintiff reported that she had not taken her Zoloft (anxiety) medication and that her symptoms increased while off the medication. Plaintiff further reported that she stopped attending mental health counseling at Zoar Valley Counseling Center because the staff was not helpful. *Id.*

On May 21, 2012, Plaintiff sought treatment at Lakeshore Hospital emergency room for left foot pain and swelling (R. 303), where an X-ray of Plaintiff's left foot revealed bony non-union of Plaintiff's fifth metatarsal bone with no acute fracture or dislocation. (R. 445).

On September 14, 2012, Ronald G. Greco, M.D. ("Dr. Greco"), a podiatrist, completed a consultative physical examination on Plaintiff that showed tenderness along Plaintiff's medial (middle) right foot, with full range of motion and normal reflexes of Plaintiff's back. (R. 468). Dr. Greco opined that Plaintiff's lower back pain was a generally chronic mild condition and that Plaintiff's left lower leg and foot pain were unlikely to be a result of lumbar radiculopathy. (R. 469).

On August 2, 2012, Donna Miller, D.O. ("Dr. Miller"), an osteopath, completed a consultative internal medical examination on Plaintiff who reported that she was able to cook, clean, take showers, and dress, and enjoyed watching television, reading, and listening to the radio. (R. 350). Upon physical examination, Plaintiff exhibited a gait

favoring her right side, normal stance, and full range of motion of the cervical and lumbar spine, hips, shoulders and knees, limited dorsiflexion and plantar flexion of the ankles, slight left foot edema (swelling), and some left foot inversion. (R. 351). Plaintiff's straight leg-raising test[6] showed normal results. Dr. Miller diagnosed Plaintiff with chronic left foot pain, with history of fracture, gastritis, hypothyroidism, and obesity.[7] Dr. Miller opined that Plaintiff had a mild limitation to prolonged standing and walking.

That same day, Kevin Duffy, Psy.D., ("Dr. Duffy"), conducted a psychiatric evaluation of Plaintiff who exhibited somewhat anxious affect, mildly impaired attention and concentration and recent and remote memory skills, fair insight and judgment, and activities of daily living that included cooking, cleaning and driving short distances (R. 347), watching television, listening to the radio, and reading, and that she had a good relationship with her family. Dr. Duffy opined that Plaintiff was able to follow and understand instructions and directions and perform simple tasks independently, may have difficulty maintaining attention and concentration and dealing with stress, but Plaintiff's psychiatric problems would not interfere with Plaintiff's ability to function on a regular basis. Dr. Duffy diagnosed Plaintiff with major depressive disorder without psychotic features, anxiety disorder not otherwise specified ("NOS"), and alcohol abuse in remission. (R. 347).

On August 20, 2012, P. Kudler, a state agency psychiatrist, completed a psychiatric review technique form on Plaintiff and assessed Plaintiff with no restriction to

---

[6] Straight leg raising tests use manipulation to evaluate whether an individual with back pain has an underlying herniated disc.
[7] Plaintiff was 5'4" tall and weighed 262 pounds, findings that result in a body mass index ("BMI") of 45 (severe obesity).

Plaintiff's ability to maintain social functioning, concentration, persistence or pace, and no repeated episodes of decompensation.  (R. 363-64).

An X-ray of Plaintiff's left foot on October 8, 2012, showed incomplete bony union of Plaintiff's proximal fifth metatarsal bone.  (R. 626).

On March 23, 2013, Physician Assistant Katie Vincent ("P.A. Vincent"), completed a physical examination on Plaintiff who reported feeling well with hip pain as a result of her broken metatarsal bone.  (R. 472).


## DISCUSSION

### 1.    Disability Determination Under the Social Security Act

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . ..  An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves that he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is alternative employment in the national economy suitable to the claimant.  *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

8

## A.    Standard and Scope of Judicial Review

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion."  *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience."  *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight.  *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence.  *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§  405(g) and 1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[1] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

---

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[7] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be

denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g), 416.920(g). The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F2d at 467. In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision. *Richardson,* 402 U.S. at 410.

**B.    Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit. 20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed. 20 C.F.R. § 404.1572(a). Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574. In the instant case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 10, 2010, the date of Plaintiff's application for benefits. (R. 24). Plaintiff does not contest this finding.

**C.     Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether Plaintiff had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do "basic work activities."  The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff had the severe impairments of syncope, degenerative disc disease, anxiety, depression, chronic foot pain secondary to a history of fracture, thyroid disorder, and gastritis (R. 24), and that Plaintiff did not have an impairment or combination of impairments as defined under 20 C.F.R. § 404.920(c). (R. 25-27).

Plaintiff does not contest the ALJ's step two disability findings.

**D.     Listing of Impairments, Appendix 1**

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments").  If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is

considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").  The relevant listings of impairments in this case include 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02 ("§ 1.02")(Major dysfunction of a joint), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.06 ("§ 1.06") (Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.04 ("§ 12.04") (Affective disorders), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.06 ("§ 12.06") (Anxiety related disorders).

Plaintiff contends that the ALJ's finding that Plaintiff's foot impairment did not meet the criteria for disability under § 1.06 is without substantial evidence, as the ALJ erred in failing to discuss whether Plaintiff was able to meet the specific criteria provided under § 1.06.  Plaintiff's Memorandum at 18-20.  Defendant maintains that the ALJ was not required to evaluate whether Plaintiff's foot impairment met the criteria for disability under § 1.06, as § 1.06 applies only to a claimant's tarsal bone(s), and not, as applicable to Plaintiff's impairment, a claimant's metatarsal bones.  Defendant's Memorandum at 13.

The ALJ mistakenly identified § 1.02 (major dysfunction of a joint), as the relevant category of impairment to Plaintiff's foot impairment, finding that Plaintiff was unable to meet the second criteria required under the listing, the inability to ambulate effectively under 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2b ("§ 1.00B2b"), and that Plaintiff was therefore not disabled.  (R. 25).  As Plaintiff contends, the appropriate listing to establish disability based on the fracture of a claimant's foot is § 1.06.  Notably, both § 1.02 and § 1.06 of the listing of impairments require a claimant to establish the inability

to ambulate effectively to be considered disabled.  Accordingly, no error results from the ALJ's failure to analyze Plaintiff's disability under § 1.06, as substantial evidence supports the ALJ's finding that Plaintiff was capable of effective ambulation under § 1.00B2b(2), the second criteria for disability under § 1.06 as well as § 1.02.  The court therefore proceeds to review whether the ALJ's finding that Plaintiff's foot impairment results in the inability to ambulate effectively under § 1.00B2b is supported by substantial evidence such that Plaintiff is disabled.  *See Figueroa v. Commissioner of Social Security,* 2016 WL 413079, at *6 (D.N.J. Feb. 1, 2016) (no error where ALJ did not provide meaningful review under § § 1.03 and 1.06, and claimant was not able to establish ineffective ambulation under § 1.00B2b(2)).

> To ambulate effectively an individual must be capable of
>
> sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulation activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single handrail.  The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2b(2)

In this case, substantial evidence supports the ALJ's determination that Plaintiff is able to ambulate effectively and does not meet the criteria for disability under § 1.00B2b (inability to ambulate effectively).  In particular, Plaintiff testified that she drives her car up to 20 miles on a daily basis (R. 42), goes shopping (R. 210), and is able to walk a distance of a quarter of a mile at a time.  (R. 213).  During Dr. Miller's consultative

internal medical examination completed on August 2, 2012, Plaintiff exhibited a normal gait favoring her right side, used no assistive devices, needed no assistance getting on and off of the examination table, and was evaluated with only a mild limitation to prolonged sitting and standing. (R. 350). Plaintiff reported that she did not use crutches, a cane, walker, wheelchair or other assistive devices. (R. 212). While Plaintiff testified that she holds onto the grocery cart while shopping and needs to take breaks while walking (R. 213), such limitation to Plaintiff's ambulatory ability, without more, does not meet the criteria for ineffective ambulation under § 1.00B2b(2). *See Hogan v. Colvin,* 2015 WL 667906, at *4 (W.D.N.Y. Feb. 17, 2015) (claimant able to complete activities of daily living like cleaning, showering, and shopping without a brace or wheelchair is able to ambulate effectively under § 1.00B2b(2)). Substantial evidence in the record thus establishes that Plaintiff was able to walk without the use or two crutches or canes, walk a block at a reasonable pace on rough or uneven surfaces, and carry out routine ambulatory activities such as shopping and banking, such that Plaintiff is able to ambulate effectively as defined under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(2), and is not disabled under either § 1.02 or § 1.06 of the listed impairments. Any error that results from the ALJ using the incorrect category of a listed impairment to analyze Plaintiff's foot impairment is therefore harmless. *See Burgess v. Colvin,* 2014 WL 1875360, at * 9 (W.D.N.Y. May 9, 2014) (ALJ's failure to consider proper listing considered harmless where evidence does not support an extreme limitation in claimant's ability to walk). Plaintiff's motion on this issue is without merit.

**E. Plaintiff's ability to perform past relevant work**

In determining whether a claimant's impairment(s) prevent the claimant from performing past relevant work, ALJs are required to  review the claimant's residual functional capacity and physical and mental demands of the claimant's past work.  *See* 20 C.F.R. § 404.1520(e).  Specifically, the Commissioner must demonstrate the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities."  *Id.*  An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.  *Decker*, 647 F.2d at 294.

In this case, the ALJ determined that Plaintiff was not able to perform her past relevant work as a deli worker, home health care aide, housekeeper, nurse's aide, dishwasher and prep cook as those positions required the performance of work excluded by Plaintiff's residual functional capacity.  (R. 31).  Plaintiff does not contest this finding.

**F. Suitable Alternative Employment in the National Economy**

The Second Circuit requires that "all complaints . . . must be considered together in determining . . . work capacity."  *DeLeon v. Secretary of Health and Human Services,* 734 F.2d 930, 937 (2d Cir. 1984).  Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's

severe impairment, the claimant has the residual functional capacity to perform past work, 20 C.F.R. § § 404.1520(a)(4)(iv), and to prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training.  *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

It is improper to determine a claimant's residual work capacity based solely upon an evaluation of the severity of the claimant's individual complaints.  G*old v. Secretary of Health and Human Services*, 463 F.2d 38, 42 (2d Cir. 1972).  To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they permit certain basic work activities essential for other employment opportunities.  *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981).  Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities."  *Id.* at 294.

An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294.  In addition, the Commissioner must establish that the claimant's skills are transferrable to the new employment if the claimant was employed in a "semi-skilled" or "skilled" job.[8]  *Id.* at 294.  This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy.  *Id.* at 296.  Where applicable, the Medical Vocational Guidelines of Appendix 2 of Subpart P of the Regulations ("the Grids") may be used to meet the Secretary's burden of proof concerning the availability of alternative employment and supersede the requirement of

vocational expert testimony regarding specific jobs a claimant may be able to perform in the regional or national economy. *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

In instances where nonexertional limitations diminish a claimant's ability to perform the full range of "light" work, the ALJ should require the Secretary to solicit testimony from a vocational expert regarding the availability of jobs in the national and regional economies suitable for employment of an individual with exertional and nonexertional limitations similar in nature to the claimant's. *Bapp*, 802 F.2d 606 at 501. Following a vocational expert's testimony, a plaintiff must be afforded an opportunity to rebut the expert's evidence. *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989).

The Act requires the ALJ utilize the same residual functional capacity assessment used to determine if a claimant can perform past relevant work when assessing a claimant's ability to perform other work. 20 C.F.R. § 404.1560(c)(2). "Hypothetical questions asked of the vocational expert must 'set out all of the claimant's impairments.'" *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (citing *Gamer v. Secretary of Health and Human Services*, 815 F.2d 1275, 1279 (9th Cir. 1987)). In this case, the ALJ determined that Plaintiff had the residual functional capacity to perform unskilled sedentary work with limitations to Plaintiff's social functioning and concentration, persistence and pace. (R. 31). Plaintiff does not contest this finding, but maintains that the ALJ improperly relied on Social Security Ruling ("S.S.R.") 83-14 to establish that Plaintiff's non-exertional impairments did not adversely affect Plaintiff's occupational base, and included no findings on Plaintiff's education and work experience. Plaintiff's Memorandum at 26-30. Plaintiff further contends that the court should rely on the Third Circuit's ruling in *Sykes v. Apfel*, 228 F.3d 259, 267-68 (3d Cir.

2000) ("*Sykes*"), and *Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005) ("*Allen*"), in determining whether the ALJ was required to gather additional evidence on the effects of Plaintiff's non-exertional limitations (*Sykes*), or rely on "crystal clear" Social Security Rulings to support the ALJ's reliance on the Grids (*Allen*). Plaintiff's Memorandum at 22-26. Defendant maintains that no error results from the ALJ's mistaken reference to S.S.R. 83-14, as the ALJ correctly analyzed Plaintiff's ability to perform work using the Grids, finding that Plaintiff's non-exertional limitations do not so reduce the occupational base of unskilled sedentary work such that Plaintiff should be considered disabled. Defendant's Memorandum at 16-17.

Plaintiff's reliance on the Third Circuit's rulings in *Sykes* and *Allen* is misplaced for several reasons. First, this Court is obliged to follow Second Circuit precedent until it is overruled by a higher court or until Supreme Court precedent renders it untenable. *See United States v. Emmenegger,* 329 F. Supp.2d 416, 436 (2d Cir. 2012). Second, as Defendant correctly contends, the Second Circuit has not yet established precedent to require that the ALJ to obtain VE testimony where a claimant's nonexertional limitations do not significantly diminish the claimant's occupational base. *See Bapp,* 802 F.2d 601 at 605 (ALJ may rely on the Grids when they accurately reflect the claimant's impairments and the claimant's nonexertional impairments do not significantly limit the rage of work permitted by the claimant's exertional limitations). Third, the report accompanying the Social Security Administration's promulgation of the Grids indicates that negligible reductions in work capacity caused by non-exertional impairments do not invalidate the presumptions create by the grids:

> Where a person has nonexertional (or additional exertional) limitations, the ranges or work he or she can perform (sedentary to heavy) are diminished by

exclusion of the particular occupations or kinds of work within those ranges that entail use of the abilities which the person has lost. In some cases the exclusion will have a negligible effect, still leaving the wide range of work capability within the functional level; while on others the range of possible work may become so narrowed that the claimant does not have a meaningful employment opportunity.

42 Fed. Reg. 55,349, 55358 (1978); *Bapp*, 802 F.2d 601 at 606.

"The question of diminution of work capacity can be determined by evaluating []

'the basic mental demands of competitive, remunerative, and unskilled work' as

characterized by 'the ability, on a sustained basis, to understand carry out and

remember simple instructions; respond appropriately to supervision, coworkers, and

usual work situations; and to deal with changes in a routine work setting.'" *Hurd v. Apfel,*

2013 WL 140389, at *3 (N.D.N.Y. Jan. 11, 2013) citing *Sipe v. Astrue*, 873 F.Supp.2d

471, 480 (N.D.N.Y. 2012)).   In this case, Plaintiff's limitation to Plaintiff's ability to

interact with others does not so diminish Plaintiff's ability to perform unskilled sedentary

work as to require testimony by a vocational expert.  Specifically, on August 2, 2012, Dr.

Duffy evaluated Plaintiff with the ability to follow and understand instructions and

directions and perform simple tasks independently, and opined that Plaintiff may have

difficulty maintaining attention and concentration and dealing with stress, but Plaintiff's

psychiatric problems would not interfere with Plaintiff's ability to function on a regular

basis. (R. 347).  On August 20, 2012, State agency Psychiatrist P. Kudler assessed

Plaintiff with no restriction to Plaintiff's ability to maintain social functioning,

concentration, persistence or pace, and no repeated episodes of decompensation.

 (R. 363-64).  Plaintiff testified that her activities of daily living include driving short

distances, watching television, listening to the radio, and reading (R. 347), that Plaintiff

is able to interact appropriately with small groups of people (R. 49), spends her days chatting with her daughter and her grandson, uses the Internet, and visits with family and friends. (R. 50). Plaintiff's alleged non-exertional limitations did not therefore result in such significant diminution of Plaintiff's capacity to perform unskilled sedentary work such that the ALJ was required to obtain the testimony of a vocational expert. The ALJ's finding that Plaintiff is not disabled based on the Grids is therefore supported by substantial evidence.[9] Plaintiff's motion on this issue is without merit.

Additional medical evidence

Plaintiff contends that the ALJ erred by not obtaining a residual functional assessment from Plaintiff's treating physicians Plaintiff's Memorandum at 30-3, and maintains that the ALJ had a duty to obtain medical records referred to in the record and that no evaluation of Plaintiff's ability to walk for short distances exist in the record. Plaintiff's Memorandum at 31. Defendant maintains that attempts by the ALJ to obtain additional records from Zoar Valley Clinic and Buffalo Spine and Sports Medicine were unsuccessful, and that Plaintiff's counsel did not object to the admission of records during Plaintiff's administrative hearing on June 11, 2013. Defendant's Memorandum at 18. As indicated, Discussion, *supra*, at 12-19, Plaintiff testified that she is able to walk for a quarter of a mile at a time, such substantial evidence that supports the ALJ's residual functioning capacity assessment of Plaintiff. As substantial evidence supports the ALJ's finding that Plaintiff was not disabled, the court does not proceed to review Plaintiff's other contentions on this issue. *See* Plaintiff's Memorandum at 30-31.

---

[8] Plaintiff's contention that the ALJ erred in not discussing Plaintiff's education and ability to communicate in English is also misplaced as the ALJ specifically addressed those criteria. (R. 31).

## CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 10) should be DENIED;

Defendant's motion (Doc. No. 17) should be GRANTED.  The Clerk of the Court should

be instructed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        August 7, 2017
             Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED that the Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:         August 7, 2017
               Buffalo, New York